UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| GARY WATSKY,<br>*Plaintiff*<br><br>v.<br><br>WILLIAMSON COUNTY, TEXAS,<br>ROBERT CHODY, MARK LUERA,<br>STEPHEN DEATON, and<br>UNKNOWN WILLIAMSON<br>COUNTY DEPUTIES,<br>*Defendants* | Case No. 1:21-cv-00374-RP |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE ROBERT PITMAN
   UNITED STATES DISTRICT JUDGE

Now before the Court are Defendant Mark Luera's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 42) and Defendant Stephen Deaton's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 43), both filed September 16, 2022, and the associated response and reply briefs. By Text Order entered April 20, 2023, the District Court referred the Motions to this Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I. Background

Plaintiff Gary Watksy brings this lawsuit under 42 U.S.C. § 1983 against Williamson County, Texas, former Williamson County Sheriff Robert Chody, former Williamson County Lieutenant Mark Luera, former Williamson County Commander Stephen Deaton, and unknown Williamson County Deputies. Watsky alleges that his Fourth and Fourteenth Amendment rights to be free from

1

unreasonable use of excessive force and warrantless searches and seizures were violated when Williamson County deputies raided his home on May 2, 2019.

**A. Facts**

In 2017, Williamson County contracted with Big Fish Entertainment, LLC to feature county law enforcement officers in the television show Live PD. Dkt. 35 (Plaintiff's Second Amended Complaint) ¶ 153. Watsky alleges that Luera and Deaton "staged" dramatic arrests with raids and physical "take downs" for Live PD episodes. *Id.* ¶¶ 128, 228.

On April 17, 2019, Williamson County issued an arrest warrant for Watsky's son, Asher Watsky, accusing him of aggravated assault with a deadly weapon (a shovel). *Id.* ¶¶ 17, 19. Asher appeared in Williamson County District Court for a probation hearing on May 2, 2019, while the warrant was pending. *Id.* ¶¶ 21-22. Watsky alleges that Chody or his supervising deputies removed the warrant from the county computer system so that Asher would not be arrested while he was in court. *Id.* ¶¶ 22, 24. Watsky alleges that Chody and his deputies planned to arrest Asher later, at Watsky's home, and capture the arrest for an episode of Live PD. *Id.* Watsky alleges: "Any arrest of Asher could have peaceably taken place at any time after the grand jury indicted him on March 28, the capias issued on April 17, including earlier on the same day as the raid on May 2nd in the courtroom, where he peaceably appeared." *Id.* ¶ 27.

Around 7 p.m. on May 2, 2019, Williamson County deputies "broke down both the front and back doors of [Watsky's] home" without warning. *Id.* ¶ 54. The deputies did so "[w]ith bright lights, cameras rolling and throwing flash bang grenades," while "yelling and screaming." *Id.* ¶ 55. An unidentified individual "shoved" a rifle into Watsky's midsection, and he "observed a finger on the trigger." *Id.* ¶ 55. After telling deputies he was feeling ill, Watksy "was allowed to leave standing hands up against the wall with guns pointed at him and was placed on a couch surrounded by deputies who restrained him and warned him not to make any further movement." *Id.* ¶ 63.

Watsky's allegations that he was "pushed" and "roughly frisked" appear to have occurred during this incident.[1] *Id.* ¶¶ 209, 291. Watsky "observed a deputy with a large K-9 dog" searching the home, which he alleges was because of a "fabricated" narrative that deputies expected to find "dangerous drugs" in the home. *Id.* ¶ 69. The search yielded "no contraband or any other illegal items." *Id.* ¶ 66. As the deputies completed the search, Watsky "suffered an anxiety attack with hyperventilated breathing and a highly accelerated heart rate." *Id.* ¶¶ 66-67, 203.

Live PD cameramen allegedly entered Watsky's property with the deputies to film the raid. *Id.* ¶¶ 55, 71. As the officers left, Watsky observed a cameraman in his front yard, and a neighbor told him that the raid was being broadcast live on Live PD. *Id.* ¶¶ 71, 73. Big Fish "directors or producers" allegedly sat in a police vehicle next to the house to observe. *Id.* ¶ 57. Watsky alleges that the raid on his home was "only one instance of the many LIVE PD encounters conducted in compliance with Sheriff Chody's widespread ad hoc policy of using gratuitous excessive use of force and violence on non-resisting individuals accommodating Big Fish TV productions for profit and ratings." *Id.* ¶ 61. Watsky alleges that he was diagnosed with Post-Traumatic Stress Disorder and suffers from anxiety attacks and other physical symptoms as a result of the deputies' actions during the search. *Id.* ¶¶ 77, 203-204.

**B. Procedural Background**

Watsky asserts claims against Williamson County under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), for violating his Fourth and Fourteenth Amendment rights by adopting unconstitutional policies and failing to train its deputies. In his First Amended Complaint,

---

[1] In his First Amended Complaint, Watsky alleged that the deputies "grabbed, bodily searched, handcuffed and threw Gary Watsky to the ground on his stomach while other deputies pointed military grade assault rifles at him. Then, deputies physically forced Gary Watsky outside on to his lawn by grabbing his handcuffed arms and guiding him outside." Dkt. 10 ¶ 21. Watsky does not allege in his Second Amended Complaint that he was handcuffed, thrown to the ground, or physically forced outside.

3

Watsky also asserted Fourth and Fourteenth Amendment violations and a due process violation of the Texas Constitution against Luera, Deaton, and the unknown deputies, as well as violations of his rights under the Fourth and Fourteenth Amendments by Sheriff Chody in his individual capacity. Dkt. 10. Williamson County, Luera, and Deaton moved to dismiss. Dkts. 11, 12, and 19.

The District Court denied the motions to dismiss without prejudice. Dkt. 26. The Court found that Watsky properly alleged that his Fourth and Fourteenth Amendment rights were violated when the deputies conducted a warrantless search of his home absent exigent circumstances, used excessive force against him, and arrested him without probable cause. Dkt. 26 at 7-8. The Court held that Williamson County could be liable for these violations based on the County and Chody's policy of "encouraging outsized force and violence for Live PD" and failure to train officers in the use of force and warrantless searches. *Id.* at 9-11. The Court denied Luera and Deaton's motions to dismiss without prejudice and granted Watsky's request to take limited discovery on Luera and Deaton's qualified immunity defense. *Id.* at 13.

In his Second Amended Complaint, his live pleading, Watsky adds state law claims for assault and battery against Luera, Deaton, and the unknown deputies. Defendants Luera and Deaton now move to dismiss Watsky's § 1983 constitutional claims under Rule 12(b)(6).

## II.   Legal Standard

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

4

*Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is generally limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### III.     Analysis

Luera and Deaton argue that Watsky's supervisory liability claims against them should be dismissed. They contend that his complaint does not meet the *Iqbal/Twombly* pleading standard because it is conclusory and fails to plead factual allegations necessary to support a supervisory liability claim. Alternatively, Luera and Deaton argue that Watsky does not overcome their qualified immunity defense. Because Luera and Deaton do not address Watsky's state law claims for assault and battery or his claim that they violated his due process rights under the Texas Constitution, the Court considers only whether they are entitled to dismissal of his Fourth and Fourteenth Amendment claims.

The parties also do not address Watsky's Fourteenth Amendment claim separately from his Fourth Amendment claims. Courts have held that the Fourth Amendment's requirements apply to allegations of unlawful search and seizure and excessive force brought under the Fourteenth

Amendment. *See Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 434-35 (5th Cir. 2008) (holding that Fourth Amendment requirements were adequate to satisfy due process in case in which plaintiffs' Fourteenth Amendment allegations "mirror[ed]" their Fourth Amendment claim); *see also Graniczny v. City of El Paso, Tex.*, 809 F. Supp. 2d 597, 602 n.4 (W.D. Tex. 2011) (construing Fourteenth Amendment excessive force claim under Fourth Amendment). Because Watsky's Fourteenth Amendment claim mirrors his Fourth Amendment claims, the Court considers all his claims under Fourth Amendment law.

### A. Supervisory Liability under Section 1983

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

To state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) show that the alleged deprivation was committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). Supervisory officials cannot be held liable under § 1983 for the actions of subordinates on any theory of vicarious or *respondeat superior* liability. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Rather, to be liable under § 1983, a supervisor must have (1) affirmatively participated in the acts that cause the constitutional deprivation, or (2) implemented unconstitutional policies that causally result in the constitutional injury. *Gates*, 537 F.3d at 435.

#### 1. Luera

Watsky asserts Fourth and Fourteenth Amendment claims against Luera as a "supervisor and participant defendant." Dkt. 35 ¶ 5. Luera contends that the "mere allegation that Defendant Luera

was 'a supervisor, directed and was present at the Watsky home-invasion' does not meet the standard." Dkt. 42 at 6 (quoting Second Amended Complaint, Dkt. 35 ¶ 294). Luera argues that there are no specific factual allegations that he "was involved in directing the level of force in Plaintiff's arrest; was in a position to stop or de-escalate the level of force being used; or in any way caused Plaintiff's injuries." Dkt. 42 at 7.

Watsky alleges that Luera was "the Entry Team Leader" and personally directed the unlawful search of his home. Dkt. 35 ¶¶ 42, 134. The Court finds that this is enough to allege Luera's personal involvement in the search. *See Osborne v. Harris Cnty., Tex.*, 97 F. Supp. 3d 911, 928 (S.D. Tex. 2015) (denying qualified immunity defense on summary judgment as to each officer involved in entry and search of apartment, which a reasonable jury could find was unlawful).

To prove his supervisory liability claim, Watsky must show more than Luera's "mere presence at the scene where subordinates allegedly violated the plaintiff's constitutional rights." *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (affirming grant of summary judgment where evidence showed that officer neither made physical contact with plaintiff nor gave "any command, signal, or any other form of direction to the officers"). But at the motion to dismiss stage, allegations that a supervisor was "in a position to" – and did – direct the action constituting a constitutional violation are sufficient. *Peña v. City of Rio Grande City*, 879 F.3d 613, 620-21 (5th Cir. 2018).

Along with his allegations that Luera directed the raid, Watsky alleges that Luera created a false narrative about the danger the situation presented. Luera was recorded by Live PD on the way to Watsky's home stating that Watsky's son was a "dangerous subject" because of his "extensive history of narcotics use" and "background of violence." Dkt. 35 ¶¶ 46-47. At the motion to dismiss stage, the Court finds this sufficient to plausibly allege that Luera personally provided direction to the officers that was causally connected to their use of excessive force and unlawful

search of Watsky's person. *See Peña*, 879 F.3d at 620-21; *Butler v. Hinds Cnty., Miss.*, No. 3:18-CV-326-DPJ-FKB, 2018 WL 4440315, at *4 (S.D. Miss. Sept. 17, 2018) (finding that plaintiff plausibly alleged defendant's personal involvement in false arrest where defendant "appear[ed] to have directed the deputy" who swore to the affidavits initiating the charges).

## 2. Deaton

Watsky asserts Fourth and Fourteenth Amendment claims against Deaton as a "supervisor, and either an organizer, supervisor, participant, or bystander defendant." Dkt. 35 ¶ 4. Deaton argues that Watsky fails to plausibly allege "how Deaton's conduct violated a constitutional right because he fails to plead facts to show that Deaton supervised the raid, implemented the policies, or removed the capias." Dkt. 43 at 10.

Watsky alleges that Deaton acted "behind-the-scenes . . . to coordinate and select incidents for filming, including the Watsky house-invasion," and that Deaton "planned" the raid. *Id.* ¶¶ 121-22. In his role as Special Tactics and Response Division and Team Commander, Deaton "could select deputies to appear on LIVE PD" and was "in charge of rewards" for them, which included rewards for "good" uses of force. *Id.* ¶¶ 121, 123. Watsky also alleges that Chody, Luera, or Deaton removed the warrant from the computer system so that Asher's arrest could be filmed for Live PD.[2] In sum, Watsky alleges that Deaton "engag[ed] in pre-planning activities, assign[ed] deputies who would use excessive force, and facilitate[ed] the removal of the capias." *Id.* ¶ 263. The Court finds that Watsky thus alleges that Deaton affirmatively participated in the alleged constitutional violations. *See Peña*, 879 F.3d at 620-21; *Randle v. Alford*, No. 1:09-CV-166, 2011 WL 817203, at *2 (E.D. Tex. Jan. 24, 2011) (finding that allegation warden was responsible for failure to

---

[2] Deaton incorrectly argues that the allegation he removed the warrant from the system is the only fact Watsky alleges to support the claims against him. The Court also rejects Deaton's argument that removal of the warrant asserts a violation of Asher's constitutional rights rather than Watsky's. This allegation provides factual support for Watsky's claim that Deaton planned the raid on his home.

8

evacuate prison sufficiently stated personal participation in unconstitutional confinement claim), *R. & R. adopted*, 2011 WL 810343 (E.D. Tex. Mar. 2, 2011). The Court also finds these facts sufficient to allege that Deaton's actions were causally connected to the claimed constitutional violations.

At the same time, Watsky has not sufficiently pled his other theories of liability against Deaton. He alleges that Williamson County and Sheriff Chody, the policymaker, implemented a policy of encouraging excessive force and failed to train their officers. Watsky alleges no facts supporting a plausible inference that Deaton was responsible for the alleged policy or training and supervision.

Watsky also fails to allege that Deaton is liable as a bystander. Under the bystander liability doctrine, "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). The absence of an allegation that Deaton was present at the scene is fatal to Watsky's claim. *See Whitley*, 726 F.3d at 646 ("However, liability will not attach where an officer is not present at the scene of the constitutional violation.").

For these reasons, the Court recommends that Deaton's motion to dismiss should be granted as to Watsky's claims that Deaton is liable as a bystander defendant and for implementing unconstitutional policies and failure to train.

**B. Qualified Immunity**

Qualified immunity extends to government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An official who violates a federal right is entitled to qualified immunity if his or her actions were objectively reasonable. *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993). Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is

unavailable. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). To rebut the qualified immunity defense, a plaintiff must plead specific facts showing that (1) the official violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at that time. *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018).

As discussed above, Watsky plausibly alleged that Luera and Deaton are liable for the violations of his constitutional rights and therefore satisfies the first prong of the qualified immunity inquiry.[3] Before considering whether Watsky has satisfied the second prong, the Court addresses his argument that qualified immunity cannot be raised in a motion to dismiss.

Watsky argues that "a 12(b)(6) motion is not the proper mechanism to assert an affirmative defense of Qualified Immunity." Dkt. 44 at 7. The District Court already rejected this argument, but permitted Watsky to proceed with limited discovery on Luera and Deaton's qualified immunity defense. Dkt. 26 at 12. After the Court entered its Order, the Fifth Circuit clarified that "a plaintiff asserting constitutional claims against an officer claiming [qualified immunity] must survive the motion to dismiss without *any* discovery." *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022). When the pleadings are insufficient to overcome qualified immunity, "the district court *must* grant the motion to dismiss without the benefit of pre-dismissal discovery." *Id.* at 312. Accordingly, Luera and Deaton have properly raised the qualified immunity defense in their motions to dismiss.

Watsky also argues that Luera and Deaton have not met their burden to plead their qualified immunity defenses, but it is Watsky who has the burden to overcome qualified immunity. *See Kovacic*, 628 F.3d at 211 ("Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available."). Watsky need only plead facts that, if true, would overcome Luera and Deaton's qualified immunity defenses. *Carswell*, 54 F.4th at 312.

---

[3] The District Court held that Watsky had adequately alleged violations of his constitutional rights, Dkt. 26 at 7-8, and Luera and Deaton challenge only their individual liability.

To overcome qualified immunity, Watsky must plead specific facts to show it was clearly established that Luera and Deaton's conduct was unlawful.

> "Clearly established" means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate. This demanding standard protects all but the plainly incompetent or those who knowingly violate the law.

*Wesby*, 138 S. Ct. at 589 (cleaned up).

1. **Search of Plaintiff's Home**

Physical entry into the home "is the chief evil against which the . . . Fourth Amendment is directed." *United States v. United States Dist. Ct.*, 407 U.S. 297, 313 (1972). An arrest warrant "implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). To avoid violating the Fourth Amendment, law enforcement officers must have an objectively reasonable belief that the individual named in the arrest warrant (1) resides at the dwelling, and (2) is at the dwelling at the time of the entry. *See United States v. Barrera*, 464 F.3d 496, 500 (5th Cir. 2006). Watsky alleges that Asher was a "guest" in his home that day, suggesting that Asher did not reside there. Dkt. 35 ¶ 276. The Court nevertheless assumes without deciding that entry into the home to execute the arrest warrant was lawful.

"Any arrest may be accompanied by a search 'incident to the arrest' of the immediate vicinity, limited to areas in which weapons might be found, regardless of probable cause or reasonable suspicion." *United States v. Virgil*, 444 F.3d 447, 451 (5th Cir. 2006) (quoting *Maryland v. Buie*, 494 U.S. 325, 327 (1990)). Officers who are lawfully inside a residence to serve an arrest warrant may conduct a protective sweep with only reasonable suspicion. *Buie*, 494 U.S. at 327.

> A "protective sweep" is a quick and limited search of the premises, incident to an arrest and conducted to protect the safety of police

>officers and others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises.

*Id.*

Accepting Watsky's allegations as true, it was clearly established that searching his entire home exceeded any authority the deputies had to arrest Asher there. Dkt. 35 ¶ 176. Any search incident to Asher's arrest would be limited to the "immediate vicinity" of his person, *Virgil*, 444 F.3d at 451, and a routine search of the rest of the home required a search warrant or an exception to the warrant requirement. *United States v. Neely*, 345 F.3d 366, 372 (5th Cir. 2003) (stating that "routinely searching any room other than that in which an arrest occurs" or even "closed or concealed areas in that room itself" requires a search warrant or exception to the warrant requirement) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). Similarly, the search cannot be justified as a protective sweep because the deputies allegedly searched the entire home rather than performing a "cursory visual inspection" of places where a person might be hiding. *United States v. Silva*, 865 F.3d 238, 243 (5th Cir. 2017) (quoting *Buie*, 494 U.S. at 327).

Exigent circumstances also may justify the warrantless search of a person's home. The exigent circumstances exception may be met by "hot pursuit of a suspected felon; the possibility that evidence may be removed or destroyed; and danger to the lives of officers or others." *United States v. Shannon*, 21 F.3d 77, 81 (5th Cir. 1994). The Court may consider the following non-exhaustive list of factors in determining whether exigency exists:

1. the degree of urgency involved and amount of time necessary to obtain a warrant;
2. the reasonable belief that contraband is about to be removed;
3. the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought;

12

4. information indicating the possessors of the contraband are aware that the police are on their trail; and

5. the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.

*United States v. Menchaca-Castruita*, 587 F.3d 283, 289-90 (5th Cir. 2009). "Any warrantless entry based on exigent circumstances must, of course, be supported by a genuine exigency," and police may not rely on an exigency that was "created" or "manufactured" by their conduct. *Kentucky v. King*, 563 U.S. 452, 461 (2011).

Accepting the facts as alleged, it was clearly established that a "staged event for television and local theater viewing" violates the Fourth Amendment's requirement that a warrantless search must be supported by genuine exigency. Dkt. 35 ¶ 60. Because Watsky alleges that the narrative about dangerous drugs in his home was fabricated, the Second Amended Complaint does not support a reasonable belief that there was contraband in the home. Watsky further alleges that the arrest warrant for Asher had been pending for more than two weeks before it was executed, allowing officers time to seek a search warrant for the home if necessary. Without additional facts establishing exigent circumstances, the Court finds that Watsky has sufficiently alleged that the search of his home violated his clearly established Fourth Amendment rights. In light of the clearly established law at the time, Luera and Deaton's alleged actions of planning and leading a search of Watsky's entire home with a police dog were objectively unreasonable.

### 2. Excessive Force

As to the excessive force claim, officers are required to weigh any use of force against its need. In evaluating excessive force claims, courts use the factors identified in *Graham v. Connor*, 490 U.S. 386, 396 (1989): "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to

evade arrest by flight." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *id.*). Even the use of minor force, such as "pushing, kneeing, and slapping," is excessive when deployed against "a suspect who is neither fleeing nor resisting arrest." *Sam v. Richard*, 887 F.3d 710, 714 (5th Cir. 2018) (collecting cases).

The Court finds that Watsky has alleged his clearly established rights were violated by having a rifle "shoved into his chest" and "being pushed against the wall and roughly frisked." Dkt. 35 ¶ 209. As a bystander who allegedly was compliant, Watsky had a clearly established right not to be held at gunpoint or have forced used against him. *See Miller v. Salvaggio*, No. SA-20-CV-00642-JKP, 2021 WL 3474006, at *9 (W.D. Tex. Aug. 6, 2021) (stating that it was clearly established that where "all *Graham* factors counsel against the use of force, it is objectively unreasonable for a police officer to brandish a deadly weapon at bystanders or compliant suspects") (citation omitted). In light of the clearly established law at the time, Luera and Deaton's alleged actions of planning and leading a SWAT team raid intending to use "maximum" force were objectively unreasonable. Dkt. 35 ¶ 87.

### 3. Search of Plaintiff's Person

Finally, the allegations in support of Watsky's bodily search claim also overcome qualified immunity. It is clearly established that where officers have lawfully entered a premises, they must have individualized "articulable reasonable suspicion to frisk an individual" who is not named as suspect in a warrant or under arrest. *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1004 (5th Cir. 2003). Watsky alleges that he was roughly frisked although deputies had an arrest warrant only for his son. Without additional facts establishing an articulable reasonable suspicion to frisk him, Watsky has alleged a violation of his clearly established right. The Court finds that Luera and Deaton's alleged actions of planning and leading the raid were objectively unreasonable.

## IV.   Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **DENY** Defendant Mark Luera's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 42).

The Court further **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Defendant Stephen Deaton's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 43). The Court recommends that the District Court **GRANT** the motion as to Plaintiff's claim that Deaton is liable as a bystander defendant and for implementing unconstitutional policies and failure to train and **DENY** the motion as to all remaining claims. If the Court accepts this recommendation, Plaintiff's claims against Deaton for his personal participation in alleged violations of Plaintiff's Fourth and Fourteenth Amendment rights will remain.

**IT IS ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

## V.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C.

§ 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on June 1, 2023.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE