## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **GARY WATSKY,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 1:21-cv-00374-RP** |
| **WILLIAMSON COUNTY, TEXAS,** | § | |
| **ROBERT CHODY, MARK LUERA,** | § | |
| **STEPHEN DEATON, and** | § | |
| **UNKNOWN WILLIAMSON** | § | |
| **COUNTY DEPUTIES,** | § | |
| *Defendants* | § | |

## ORDER

Now before the Court are Plaintiff's Opposed Motion to Compel the Deposition of Bill Gravell, filed June 6, 2024 (Dkt. 91); Defendant Williamson County's Response in Opposition to Plaintiff's Motion to Compel Judge Gravell's Deposition and Defendant's Motion to Quash and Protection, filed June 14, 2024 (Dkt. 95); and Plaintiff's Reply, filed June 19, 2024 (Dkt. 96). By Text Order entered June 25, 2024, the District Court referred the motion to this Magistrate Judge for disposition, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I.     Background

Plaintiff Gary Watksy brings this lawsuit under 42 U.S.C. § 1983 against Williamson County, Texas ("County") and its former law enforcement officers Sheriff Robert Chody, Lieutenant Mark Luera, Commander Stephen Deaton, and unknown Deputies. In his Third Amended Complaint (Dkt. 71), Watsky alleges that his Fourth and Fourteenth Amendment rights to be free from unreasonable use of excessive force and warrantless searches and seizures were violated when deputies raided his home on May 2, 2019, and arrested his son, Asher. Watsky alleges that in 2018,

the County entered into a contract with the production company Big Fish Entertainment, LLC ("Access Agreement") to feature County law enforcement officers in the television series "Live PD," and that Asher's arrest was aired on Live PD. He brings four claims under § 1983: (1) against the County for a policy or custom of gratuitous use of excessive force and violence under *Monell v. Dep't of Soc. Services*, 436 U.S. 658 (1978); (2) against Chody, Deaton, and Luera for supervisory liability; (3) against Unknown Deputies for warrantless entry, search, seizure, and excessive use of force; and (4) civil conspiracy against all Defendants. Dkt. 71; Dkt. 98, at 3-4 (Order issued July 15, 2024 granting in part and denying in part the County's partial motion to dismiss). For the latter claim, Watsky alleges that Defendants conspired to remove Asher's arrest warrant from the County's electronic system and categorize him as dangerous so he would not be arrested during a probation hearing in County court and they could stage a raid at Watsky's home the same evening, increasing viewership of Live PD as part of their pattern of engaging in sensationalized acts of excessive force for their agreement with Big Fish. Dkt. 98 at 7 (citing Dkt. 71 at 93-94).

Watsky now asks the Court to compel the deposition of Williamson County Judge Bill Gravell in his personal capacity, arguing that he "has personal knowledge regarding what he knew, what the County Commissioners knew, and what the motivating factors were in repeatedly entering the Access Agreement despite public and whistleblower type complaints." Dkt. 91 at 2. The County asks the Court to quash Watsky's notice of deposition and issue a protective order precluding him from deposing Judge Gravell in his official and personal capacity on the grounds of relevance, legislative immunity, and improper apex deposition of the highest County official. Because the Court finds that the County has met its burden to show that the testimony Watsky seeks from Judge Gravell is irrelevant, it does not reach the County's other arguments.

## II.    Legal Standards

Under Rule 26(b)(1), parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id.* Accordingly, the scope of discovery is broad. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). After a party has attempted in good faith to obtain discovery without court action, that party may move for an order compelling disclosure or discovery. Fed. R. Civ. P. 37(a)(1).

A court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

> The movant bears the burden of showing that a protective order is necessary, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements. A trial court enjoys wide discretion in determining the scope and effect of discovery, and it is therefore unusual to find an abuse of discretion in discovery matters.

*EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) (cleaned up).

## III.    Analysis

Watsky makes the following arguments in support of his motion to compel:

- Before Asher's arrest, Judge Gravell "was involved in discussions and heard complaints related to the abuses involving Live PD," citing Dick's testimony that Judge Gravell was copied on emails from Chody asking to continue the Access Agreement. Dkt. 91 at 6 (citing deposition testimony from Williamson County District Attorney Shawn Dick at 73:6-74:9, Dkt. 91-1 at 6-7).

- Judge Gravell voted to extend the Access Agreement because "this is what his friend [Sheriff Chody] wanted." Dkt. 91 at 4 (quoting Dick Tr. at 68:20-22, Dkt. 91-1 at 5); *see also* Dkt. 96 at 4 ("As a matter of relevancy, Gravell's motivations implicate his personal support of his friend, Sheriff Chody, and his conduct.").

- "Gravell was present during each of the Commissioner's votes in approving or extending the Access Agreement, including his own eventual recusal, implicating a personal knowledge and motive." Dkt. 91 at 6.

- Watsky is "entitled to seek any knowledge from Judge Gravell regarding the Watsky raid itself and any related information he may have" and "elicit testimony related to the permission granted to Live PD without a written agreement during the Watsky Raid," particularly because the Access Agreement had lapsed but later was retroactively ratified. Dkt. 91 at 7; Dick Tr. at 212:6-213:1, Dkt. 91-1 at 9.

- Judge Gravell testified as a witness in the grand jury investigation into criminal charges associated with the Access Agreement. Dkt. 91 at 7 (citing Dick Tr. at 69:20-25, Dkt. 91-1 at 5).

For these reasons, Watsky argues, Judge Gravell "holds personal knowledge related to the events and circumstances leading up to the Watsky raid." *Id.* In his reply brief, Watsky also argues that Judge Gravell's personal and political reasons for supporting Live PD constitute first-hand knowledge of events involving Asher's arrest. Dkt. 96 at 4; *see also id.* at 2 ("Because the protection of the property and lives of the citizens of Williamson County is the business and highest of duties justifying the expenditures of public funds implicates Gravell could only have had personal and political reasons for not doing his public duty for which he was elected.").

The County responds that although Watsky seeks information related to Judge Gravell's intent and motives in voting for the Access Agreement, the agreement's existence and terms are not in dispute. Dkt. 95 at 2. This testimony is irrelevant, the County argues, because it has no bearing on Watsky's claims, and Judge Gravell has no first-hand knowledge or personal involvement "in any of the events leading to and including the at-issue arrest of Watsky's son." *Id.*

The Court finds that the County has shown no evidence suggesting that Judge Gravell possesses first-hand knowledge related to any claims and defenses. Watsky seeks testimony about Judge Gravell's motives in voting for or recusing himself from voting on the Access Agreement, but that information does not bear on his claims. Watsky also seeks "any knowledge from Judge Gravell regarding the Watsky raid itself" but offers no facts suggesting that Judge Gravell may have any such knowledge. As for the grand jury, the County submits evidence that its investigation

was related not to Asher's arrest but to the death during Live PD filming of another individual, Javier Ambler. Dick Tr. at 196:7-20, Dkt. 95 at 24.

Based on the evidence before the Court, the County has satisfied its burden to show that a protective order is necessary because Judge Gravell lacks knowledge relevant to Watsky's claims, and therefore, his deposition is outside the scope of discovery. Discovery closes November 1, 2024. Dkt. 90 ¶ 7. Should evidence emerge to support an argument that Judge Gravell has any knowledge relevant to any party's claim or defense, Watsky may re-urge his motion to compel.

### IV.    Conclusion

For these reasons, the Court **DENIES** Plaintiff's Opposed Motion to Compel the Deposition of Bill Gravell (Dkt. 91) without prejudice and **GRANTS** the County's motion to quash the Notice of Deposition of Judge Bill Gravell and for protection.

**IT IS ORDERED** that the Clerk remove this case from this Magistrate Judge's docket and return it to the docket of the Honorable Robert Pitman.

**SIGNED** on August 9, 2024.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE